IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Camp Hill Borough Republican :
Association, Caroline Machiraju, :
Katherine Pearson, :
 :
 :
 Plaintiffs :
 : No:_____
 :
 v. : Complaint in Civil Action
 : Seeking a Declaratory Judgment
 : and Injunctive Relief
Borough of Camp Hill, :
Alissa Packer, President, Borough :
Council, Borough of Camp Hill, in :
her official capacity only, :
Sara Gibson, in her official capacity :
as Borough Manager, Colton :
Weichman, in his official capacity of :
Codes Enforcement Officer of the :
Borough of Camp Hill, :
 :
 Defendants :

## Complaint in Civil Action

AND NOW, come the Plaintiffs, by and through their attorney, Marc A.

Scaringi, of Scaringi Law, who respectfully presents the within Complaint in Civil

Action (hereinafter "Complaint").

## Jurisdiction & Venue

1. This suit is a civil rights action arising under the Constitution and the

laws of the United States of America, namely, the First Amendment to the United

States Constitution and 42 U.S.C. §1983. As such, this Court has original

jurisdiction to hear this matter. 28 U.S.C.S. § 1331. Further, this is an action to redress the deprivation, under color of any state law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States. 28 U.S.C.S. § 1343 (a)(3). It is also an action to recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights. 28 U.S.C.S. § 1343 (a)(4).

2.      Venue is within this judicial district pursuant to 28 U.S.C.S. 1391 (b)(1) and (2). The Defendants reside within this judicial district. 28 U.S.C.S. 1391 (b)(1). Further, a substantial part of the events or omissions giving rise to the claim occurred in this judicial district. 28 U.S.C. S.§ 1391 (b)(2).

## The Parties

3.      Plaintiff Camp Hill Borough Republican Association is a political committee with a principal office address of PO Box 224, Camp Hill, Cumberland County, Pennsylvania.

4.      Plaintiff Caroline Machiraju is an adult individual residing at 1920 Columbia Avenue, Camp Hill, Cumberland County PA 17011.

5.      Plaintiff Katherine T. Pearson is an adult individual residing at 367 N. 25th, Camp Hill, Cumberland County, Pennsylvania 17011.

6.      Defendant Borough of Camp Hill is a political subdivision of the Commonwealth of Pennsylvania with a principal office address of 2145 Walnut St., Camp Hill, PA 17011.

7.      Defendant Alissa Packer is an adult individual and is the President of the Council of the Borough of Camp Hill with a principal office address of 2145 Walnut St., Camp Hill, PA 17011. Defendant Packer is being sued in her official capacity only as Council President. Council is responsible for the whole, proper, and efficient administration of the affairs of the Borough of Camp Hill. The Council appoints, hires, supervises, and may remove the Borough Manager.

8.      Defendant Sarah Gibson is an adult individual and is the Manager of the Borough of Camp Hill with a principal office address of 2145 Walnut St., Camp Hill, PA 17011. Defendant Gibson is being sued in her official capacity only as Manager of the Borough of Camp Hill. Defendant Gibson is the chief administrative officer of the Borough, is responsible to the Council of the Borough of Camp Hill as a whole for the proper and efficient administration of the affairs of the Borough, and supervises and is responsible for all the activities of municipal departments, including the Codes and Zoning Department and its officer.

9.      Defendant Colton Weichman is an adult individual and is the Codes Enforcement Officer of the Borough of Camp Hill with a principal office address

of 2145 Walnut St., Camp Hill, PA 17011. Defendant Weichman is being sued in his official capacity only as Codes Enforcement Officer.

10.     Plaintiffs and Defendants are referred to herein either individually or collectively as "Plaintiffs" and "Defendants."

## The Facts
## The Sign Ordinance

11.     On December 20, 2021, the Defendant Borough Council adopted Ordinance No. 2021-12 entitled, "An Ordinance of the Borough of Camp Hill, Cumberland County, Pennsylvania, Adopting the Sign Ordinance" (hereinafter the "Sign Ordinance"). (A true and correct copy of the Sign Ordinance is incorporated herein by reference, made a part hereto, attached, and marked as Exhibit A 1-24).

12.     On December 20, 2021, the Sign Ordinance was signed into law by the Mayor of Camp Hill, and pursuant to its terms it became effective immediately.

13.     The stated purposes and intent of the Sign Ordinance, includes, *inter alia*:

A.     Promote and maintain overall community aesthetic quality, safety, health, and general welfare and the assurance of protection of adequate light and air within the Borough by regulation of the posting, displaying, erecting, use and maintenance of signs.

Sign Ordinance, §802. Sign Regulation Purpose and Intent, A.

B.     Set standards and provide uniform controls that permit reasonable use of Signs and preserve the character of the Borough.

Sign Ordinance, §802. Sign Regulation Purpose and Intent, B.

C.     Establish reasonable, time, place, and manner regulations without regulating content.

Sign Ordinance, §802. Sign Regulation Purpose and Intent, C.

D.     Promote traffic safety by avoiding distraction or confusion to motorists and avoiding the impairment of motorists' ability to see pedestrians, other vehicles, obstacles, and traffic signs.

Sign Ordinance, §802. Sign Regulation Purpose and Intent, D.

E.     Protect the public welfare and enhance the overall appearance and economic value of the landscape, while preserving the unique natural environment consistent with Article I, §27 of the Pennsylvania Constitution.

Sign Ordinance, §802. Sign Regulation Purpose and Intent, E.

14.     The Sign Ordinance mandates that, "Any Sign erected, altered, or maintained after the effective date of this Ordinance shall conform to the following regulations." Sign Ordinance, §801. Applicability.

15.     The Sign Ordinance regulates signs it calls Temporary Signs, which it defines as, "A type of non-permanent Sign that is located on private property that can be displayed for no more than thirty (30) consecutive days at a time unless stated otherwise herein." Sign Ordinance, §803. Definitions.

16.     The Sign Ordinance also regulates signs it calls Personal Expression Signs which it defines as "An On-Premises Sign that expresses an opinion, interest, position, or other non-commercial message." Sign Ordinance, §803. Definitions.

17.     Plaintiffs believe and therefore aver that the category of Temporary Signs includes what is commonly understood as political yard signs promoting or opposing candidates for elective office and political issues or other similar expressive content (hereinafter referred to as "Political Yard Signs").

18.     Plaintiffs believe and therefore aver that in addition to being included in the category of Temporary Signs, Political Yard Signs are also included in the category of Personal Expression Signs.

19.     The Sign Ordinance regulations pertaining to Temporary Signs prohibit a residential property owner from placing "more than two (2) Signs, each with a Sign area no larger than 6 sq. ft., on the property at any time" on a residential lot. Sign Ordinance, §805. C.1.a.

20.     The Sign Ordinance regulations pertaining to Temporary Signs also require that "Signs corresponding to a specific event must be removed within ten (10) days following the conclusion of that event." Sign Ordinance, §805. C.1.c.

21.     The Sign Ordinance regulations pertaining to Personal Expression Signs, more particularly those relating to what is called a "singular event," prohibit such signs from being placed more than (60) days prior to that "singular event" and require that such signs be removed within thirty (30) days after the conclusion of such "singular event."

22.     The Sign Ordinance does not define the term "singular event."

23.     Defendants are enforcing the Sign Ordinance against residents of the Borough of Camp Hill.

24.     Plaintiffs believe and therefore aver that over the past sixty (60) days beginning in August of 2022, Defendant Weichman has issued at least 45 Notices of Violation of the Sign Ordinance.

25.     To initiate his enforcement of the Sign Ordinance, Defendant Weichman posts a Notice of Code Violation on the front door of the residence whose property owner the Defendant believes has violated the Sign Ordinance.

26.     Defendant Weichman also sends letters to property owners he believes have violated the Sign Ordinance. The letter warns the property owner to take action to comply with the Sign Ordinance within 10-days of the receipt of the notice and that failure to abate the Notice of Violation may result in a judgment of not more than $1,000.00 plus court costs, including reasonable attorney's fees. (A true and correct copy of one of the Notices of Violation is incorporated herein by reference, made a part hereto, attached, and marked as Exhibit B 1-2).

### Plaintiff Caroline Machiraju

27.     On or about September 10, 2022, Plaintiff Machiraju placed three Political Yard Signs in the front yard of her residence – one promoting the election of Mehmet Oz, candidate for U.S. Senate, one for Doug Mastriano candidate for

Governor of Pennsylvania, and one for Scott Perry, candidate for U.S. House of Representatives.

28.     Plaintiff Machiraju supports these three candidates wholeheartedly and believes America's survival and Americans' Constitutional freedoms and rights depend on these candidates' successes in their respective races for elective office.

29.     On October 6, 2022, Defendant Weichman issued Plaintiff Machiraju a warning that code violations have been observed on her property (hereinafter "Notice"). (A true and correct copy of the Camp Hill Borough Code Enforcement Notice is incorporated herein by reference, made a part hereto, attached, and marked as Exhibit C).

30.     The Notice warned Plaintiff that she was in violation *inter alia* of Sign Ordinance, §805. C.1.a., for having more than two (2) signs permitted and admonished her to correct this violation immediately, "To avoid a formal citation, fines, and/or other penalties…"

31.     In response to the Notice, and not wanting to be cited and fined up to $1,000.00 per day per violation and subject to other undescribed penalties,[1]

---

[1] Sign Ordinance §810. Violations. "Any Person violating any provision of this Part shall, upon conviction thereof in a summary proceeding, be sentenced to pay a fine of no more than $1,000.00 per violation, plus court costs and reasonable attorney's fees incurred by the Borough in enforcement proceedings. Each applicable Section and each day during which any Person violates any provision of

Plaintiff Machiraju took down her Political Yard Sign for Scott Perry, candidate for U.S. House of Representatives.

32.     Plaintiff Machiraju greatly regrets having to take down the Political Yard Sign of Congressman Perry because she believes so strongly in him, along with the other candidates whose Political Yard Signs she has posted in her front yard, because Congressman Perry is a soldier, patriot, and strong defender of the U.S. Constitution, and the First Amendment, in particular.

33.     Plaintiff Machiraju very much wants to return her Scott Perry Political Yard Sign to her front yard because Congressman Perry is in a hotly contested re-election campaign and Plaintiff Machiraju believes he needs all the support he can get and she wants to give him that support by displaying his Political Yard Sign on her front yard.

34.     However, if Plaintiff Machiraju puts up Congressman Perry's Political Yard Sign, she will have to take down either the one for Mehmet Oz or the one for Doug Mastriano because Defendants' Sign Ordinance §805 C.1.a. limits her to only two (2) Political Yard Signs.

---

this Part shall constitute a separate offense. This Part may be enforced by the Camp Hill Borough Police Department or the Camp Hill Borough Code Enforcement Department. The Borough may also enforce the provisions of this Part in equity in the Cumberland County Court of Common Pleas."

35.    However, candidates Oz and Mastriano are also both in hotly contested campaigns. Plaintiff Machiraju believes strongly in their candidacies, believes they need all the support they can get and she wants to give them that support by displaying their Political Yard Signs in her front yard.

36.    Plaintiff Machiraju believes and therefore avers that posting Political Yard Signs in her front yard is an inexpensive but effective way for her to advocate for the election of those political candidates she prefers and to express her political beliefs. Plaintiff Machiraju received all three Political Yard Signs as gifts. Thus, it costs Plaintiff Machiraju no money to support her preferred candidates by posting their Political Yard Signs in her yard, whereas it would be expensive for Plaintiff Machiraju to purchase television, radio or digital advertisements supporting her preferred candidates. Posting a Political Yard Sign in her front yard takes a few minutes and thus is a much more efficient way to communicate her political speech than taking the significant amount of time it takes to canvass the neighborhood on foot knocking on doors or distributing campaign materials, making random telephone calls to her neighbors to advocate for her preferred candidates. Further, Plaintiff Machiraju is not comfortable knocking on peoples' doors or calling their home telephones, assuming her neighbors even have or use home telephones. Further, it is important for Plaintiff Machiraju that she makes her neighbors, and

those individuals who drive by her property, know whom she supports for elective office.

37.    Plaintiff Machiraju very much wants to return the Scott Perry Political Yard Sign to her front yard but fears that she will be cited, prosecuted, and made to pay a penalty and subjected to other undescribed punishment as threatened by the Defendants for violating §805. C.1.a.

### Plaintiff Camp Hill Borough Republican Association

38.    Plaintiff Camp Hill Borough Republican Association (hereinafter referred to as the "Association") is a local political organization with approximately 250 members.

39.    One of the main objectives of the Association is to support the election of the Republican Party's nominees at township, school district, county, state and federal levels.

40.    Plaintiff Association is actively supporting the election of candidates for several elective offices in the 2002 General Election, including *inter alia* the offices of Governor, United States Senate, United States Congress, State Senator, and State Representative. Thus, there are more than two elective offices the Plaintiff Association is working to fill with the candidates it supports.

41.    One of the most inexpensive and effective ways for Plaintiff Association to carry out its purpose and achieve its goal of electing Republicans to

elective office in Camp Hill Borough is by having its members and volunteers distribute and post Political Yard Signs on the residential properties of Camp Hill residents.

42.     The Political Yard Signs that Plaintiff Association distributes are given to it without charge by the political committees of the candidates the Plaintiff supports. Thus, distributing Political Yard Signs is an extremely cost-effective way for Plaintiff Association to promote its candidates because it costs nothing to do it. It would be costly for the Plaintiff Association to have to purchase television, radio, and digital advertisements to support its preferred candidates. It is also very time-consuming and requires a lot of resources to do door knocking and telephone campaigns, assuming Camp Hill residents have or use home telephone numbers. Further, many members of the Plaintiff Association or supporters thereof would prefer displaying and distributing Political Yards Signs, as their means of promoting their preferred candidates, rather than interrupting their neighbors by knocking on their doors or attempting to reach them via telephone to advocate for their preferred candidates.

43.     Plaintiff Association has received and fulfilled requests from residents for more than two Political Yard Signs regularly throughout the 2022 General Election.

44.     Plaintiff Association's members and volunteers wish to distribute and post more than two Political Yard Signs on the residential properties of voters but fear that by doing so they will subject the property owners to be cited, prosecuted, and made to pay a penalty of $1,000.00 per violation per day and subjected to other undescribed punishment as threatened by the Defendants for violating §805. C.1.a.

45.     Sign Ordinance §805. C.1.a. harms the ability of the Plaintiff Association to achieve its purpose and fulfill its goals of electing Republicans to more than two elective offices in this 2022 General Election and will do the same in future primary and general elections.

46.     Sign Ordinance §805. C.1.a. compels all Plaintiffs, and all residents of the Borough of Camp Hill, to restrict the number of candidates they wish to support each election, by using inexpensive and effective Political Yard Signs, to two.

### Plaintiff Katherine T. Pearson

47.     On or about August 1, 2022, Plaintiff Pearson placed two new Political Yard Signs in the front lawn of her residential property – one supporting Mehmet Oz for the U.S. Senate and the other supporting Doug Mastriano for Governor.

48.     Plaintiff Pearson is a strong supporter of both candidates and believes their election to office is critically important to the freedom of America and the

protection of the Constitutional rights of the America people, including the First Amendment right to free speech.

49.     On August 19, 2022, Defendant Weichman posted a Code Enforcement Notice on the front door of Plaintiff Pearson's residence warning her that *inter alia* the placing of the Political Yard Signs "…sooner than 60 days before event" violated the Sign Ordinance. (A true and correct copy of the Notice is incorporated herein by reference, made a part hereto, attached and marked as Exhibit D).

50.     Based upon this enforcement action, Defendants include Plaintiff Pearson's Political Yard Signs in the definition of Personal Expression Signs and believe they were posted in violation of the Sign Ordinance because they were posted sooner than 60-days prior to November 8, 2022, which is what is commonly referred to as Election Day for the 2022 General Election.

51.     Even though the Notice does not specify the Code section of the particular violation, Plaintiff Pearson believes and therefore avers she received a warning of a Code Violation for violating §805. C.3.d.

52.     Within 48 hours of receiving the Notice of Code Violation, Plaintiff Pearson took down her Political Yard Signs, including the signs for Mehmet Oz and Doug Mastriano because she feared being cited, prosecuted, and made to pay a

penalty of $1,000.00 per day per violation and subjected to other undescribed

punishment as threatened by Defendants for violating §805. C.3.d.

53.     Plaintiff Pearson would like to display her Political Yard Signs all

year long. However, §805. C.3.d. restricts the displaying of Political Yard Signs to

60-days prior to and 30-days subsequent to a "singular event," whatever that

means.

## The Claims

### Count I
### Sign Ordinance §805. C.1.a. Violates the First Amendment
### To the United States Constitution
### 42 U.S.C.S. §1983
### (Facial as to All Plaintiffs and Residents of Camp Hill Borough
### & As-Applied to Plaintiff Caroline Machiraju)

54.     The preceding paragraphs are incorporated herein by reference and

are made a part hereto.

55.     The First Amendment provides, in pertinent part, that "Congress shall

make no law…abridging the freedom of speech." U.S. Const., amend. I.

56.     The Fourteenth Amendment applies this limitation to the states. City

of Ladue v. Gilleo, 512 U.S. 43, 129 L. Ed. 2d 36, 114 S. Ct. 2038 (1994).

57.     "The First Amendment guarantee that the freedom of speech shall not

be abridged protects the free flow of ideas in a democratic society." Arlington Cty.

Republican Comm. v. Arlington Cty., 790 F. Supp. 618, 621 (E.D. Va. 1992).

58.    "When a citizen exercises her freedom of speech, she is exercising a right that the Supreme Court has characterized as 'lying at the foundation of free government by free men.' *Schneider v. State*, 308 U.S. 147, 161, 60 S. Ct. 146, 151, 84 L. Ed. 155 (1939)." Arlington Cty. Republican Comm. v. Arlington Cty., 790 F. Supp. 618, 621 (E.D. Va. 1992).

59.    "In recognition of the importance of free speech to our political process, the Court has also stated that the First Amendment 'has its fullest and most urgent application precisely to the conduct of campaigns for political office.' *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272, 91 S. Ct. 621, 625, 28 L. Ed. 2d 35 (1971); *see also Eu v. San Francisco County Democratic Cent. Comm.*, 489 U.S. 214, 109 S. Ct. 1013, 1020, 103 L. Ed. 2d 271 (1989); *Buckley v. Valeo*, 424 U.S. 1, 14, 96 S. Ct. 612, 632, 46 L. Ed. 2d 659 (1976) (per curiam)." Arlington Cty. Republican Comm. v. Arlington Cty., 790 F. Supp. 618, 621 (E.D. Va. 1992).

60.    "…the posting of a temporary political sign is virtually pure free speech." Arlington Cty. Republican Comm. v. Arlington Cty., 790 F. Supp. 618, 621 (E.D. Va. 1992).

61.    "…pure political speech is entitled to the highest degree of First Amendment protection." Arlington Cty. Republican Comm. v. Arlington Cty., 790 F. Supp. 618, 621 (E.D. Va. 1992).

62.     On April 28, 1992, the United States Court for the Eastern District of

Virginia struck down an Arlington County ordinance limiting county residents to

displaying only two Political Yard Signs:

> Because the two-sign limit fails to leave open ample alternative means
> of communication and because it also fails to employ the least
> restrictive means for achieving its objective, the court finds that
> §F(4)(f) of the ordinance is an unconstitutional restraint on free
> speech.

Arlington Cty. Republican Comm. v. Arlington Cty., 790 F. Supp. 618, 628
(E.D. Va. 1992).[2]

63.     The Supreme Court of the United States has explained that

"residential signs play an important part in political campaigns, during which they

are displayed to signal the resident's support for particular candidates, parties, or

causes…" City of Ladue v. Gilleo, 512 U.S. 43, 55, 114 S. Ct. 2038, 2045, 129

L.Ed.2d 36, 47 (1994).

64.     "Residential signs are an unusually cheap and convenient form of

communication. Especially for persons of modest means or limited mobility, a yard

or window sign may have no practical substitute." City of Ladue v. Gilleo, 512

U.S. 43, 57, 114 S. Ct. 2038, 2045, 129 L.Ed.2d 36, 48 (1994).

_____

[2] "We agree with the district court's conclusion that the two-sign limit provisions
impermissibly infringed on the Political Parties' First Amendment guarantee of
freedom of speech. Thus, we affirm that portion of the district court's decision."

Arlington Cty. Republican Comm. v. Arlington Cty., 983 F.2d 587, 589 (4th Cir.
1993)

65.     "Even for the affluent, the added costs in money or time of taking out
a newspaper advertisement, handing out leaflets on the street, or standing in front
of one's house with a hand-held sign may make the difference between
participating and not participating in some public debate. Furthermore, a person
who puts up a sign at her residence often intends to reach *neighbors*, an
audience that could not be reached nearly as well by other means." City of Ladue
v. Gilleo, 512 U.S. 43, 57, 114 S. Ct. 2038, 2045, 129 L.Ed.2d 36, 48-49 (1994).

66.     Defendants may establish certain regulations on Political Yard Signs
without regulating content, provided those regulations are reasonable and narrowly
tailored to promote Defendants' interests and ample alternative means are available
that would permit the desired communication by Plaintiffs.

67.     However, the limitation on the number of Political Yard Signs that
may be located on a residential lot to two (2) is not narrowly tailored to serve the
Defendants' purposes set forth in Sign Ordinance, §802, Sign Regulation Purpose
and Intent, and ample alternative means are not available that would permit the
desired communication by the Plaintiffs.

68.     Regarding Sign Ordinance, §802, Sign Regulation Purpose and Intent,
A., and Defendants' interest in the aesthetics of the Borough of Camp Hill, Camp
Hill resident, Anita Burton, drove through the Borough of Camp Hill on October
22, 2022, and observed several residential properties with more than two (2)

Political Yard Signs located in their front yards and concluded the residential

properties did not appear to be cluttered, messy or unpleasing to the eyes. In fact,

residential properties with more than two (2) yard signs located in their front yards

are neat, orderly, tasteful, and aesthetically pleasing. Anita Burton took

photographs of some of these residential properties. (True and correct copies of

said photographs are incorporated herein by reference, made a part hereto, and are

attached and marked as Exhibits E 1-6). Further, See Declaration from Anita

Burton. (A true and correct copy of the same is incorporated herein by reference

made a part hereto, attached and marked as Exhibit F 1-2).

69.    Regarding Sign Ordinance, §802, Sign Regulation Purpose and Intent,

D, and the Defendants' interest in traffic safety, Borough of Camp Hill resident

Bryan Burton drove through the Borough of Camp Hill on October 22, 2022, and

observed several residential properties with more than two (2) yard signs located in

their front yards and concluded the Political Yard Signs did not present a traffic or

safety hazard. See Declaration from Bryan Burton. (A true and correct copy of the

same is incorporated herein by reference made a part hereto, attached and marked

as Exhibit G 1-2).

70.    Regarding Sign Ordinance, §802, Sign Regulation Purpose and Intent,

E., and the Defendants' interest in residential real property values, Greg Rothman,

a lifelong Cumberland County resident, who grew up in the Borough of Camp Hill,

is a real estate broker and appraiser and has bought and sold and appraised many residential properties in the Borough of Camp Hill over many years for his clients. Greg Rothman has concluded based on his years of experience that the number of Political Yard Signs has no negative effect on the value of residential real property in the Borough of Camp Hill.  See Declaration of Greg Rothman. (A true and correct copy of the Declaration and the CV for Greg Rothman are incorporated herein by reference made a part hereto, attached and marked as Exhibit H 1-2 and I 1-3 respectively).

71.    Furthermore, there are many other sections of the Sign Ordinance, which are not being challenged in the within suit, that address aesthetics and safety.

72.    Defendants may still enforce size restrictions on Political Yard Signs set forth in §805. C.3.a., "Personal Expression Signs shall have a maximum Sign Area of 10 sq. ft. and a maximum Sign Height of 6 ft. above the ground."

73.    Defendants may still enforce location restrictions. Personal Expression Signs, "shall not be allowed in public parks, public road Rights-of-Way, or on any property where the property owner has not provided permission," set forth in §805. C.3.b.

74.    Furthermore, Sign Ordinance §806. General Sign Regulations contains multiple regulations addressing the safety of signs by regulating the

location of signs, including, "No Sign shall be placed in such a position as to
endanger pedestrians, bicyclists, or traffic on a Street by obscuring the view or by
interfering with official Street Signs or signals by virtue of position or color,"
(§806. General Signs Regulations. A.1) the area and height of signs. (§806. B and
C, respectively. Further, there is a section of the Sign Ordinance regulating the
removal of unsafe, unlawful, or abandoned signs. See §806. G.1-2.

75.    Furthermore, Sign Ordinance §804. Prohibited Signs A-I prohibits all
kinds, types, and components of signs including, "Any Signs that imitate,
resemble, interfere with, or obstruct official traffic lights, Signs or signals shall be
prohibited."

76.    Thus, Defendants have a multitude of Sign Ordinance regulations they
can enforce to promote aesthetics, safety, and the other purposes set forth in Sign
Ordinance, §802, Sign Regulation Purpose and Intent A-E.

77.    Further, there are not ample alternative means. The use of Political
Yard Signs is a longstanding proven effective and inexpensive means by which
individuals Plaintiffs Machiraju and Pearson and political parties like Plaintiff
Association can advocate for their preferred candidates for elective office. Further,
Political Yard Signs, which are pure political speech, are personal to the individual
displaying them and are displayed on the individual's residential property and thus
are given special consideration and protection by courts.

78.     The limitation on the number of Political Yard Signs that may be located on a residential lot to two (2) is not narrowly tailored to serve the Defendants' purposes set forth in Sign Ordinance, §802, Sign Regulation Purpose and Intent, and ample alternative means are not available that would permit the desired communication by the Plaintiffs. Thus, §805. C.1.a violates the First Amendment to the United States Constitution.

WHEREFORE, Plaintiffs pray this Honorable Court to declare that Sign Ordinance, §805. C.1.a. facially as to all Plaintiffs' and all Borough of Camp Hill residents' and as-applied to Plaintiff Machiraju, violates the right to free speech guaranteed by the U.S. Const. amend. I. and to grant the Request for Relief as to Counts I and II set forth below.

### Count II

### Sign Ordinance §805. C.3.d. Violates the First Amendment To the United States Constitution Because of Its Durational Restriction 42 U.S.C.S. §1983 (Facial as to All Plaintiffs and Residents of Camp Hill Borough & As-Applied to Plaintiff Katherine T. Pearson)

79.     The preceding paragraphs are incorporated herein by reference as if set forth in full and are made a part hereto.

80.     Sign Ordinance §805. C.3.d requires that "Personal Expression Signs relating to a singular event may be placed sixty (60) days prior to that event and must be removed within thirty (30) days after conclusion of that event."

81.     Political Yard Signs fit the definitions for signs regulated by §805.
C.3.d.

82.     Plaintiff Katherine T. Pearson received a Code Enforcement Notice,
for according to Defendant Weichman, "Personal Expression Signs…Not to be
placed sooner than 60 days before event." See Exhibit D.

83.     Plaintiffs believe and therefore aver that other Borough of Camp Hill
residents have received Code Enforcement Notices for violations of §805. C.3.d.

84.     Sign Ordinance §805. C.3.d. bans political speech, via Political Yard
Signs, for all but 60 days before and 30 days after an election.

85.     Plaintiffs Pearson very much wants to post the Political Yard Signs of
the candidates she supports on her front lawn well before and well after any given
election. In some cases, and for some political figures, Plaintiff Pearson wishes to
post Political Yard Signs all year round. In today's world, campaigns for elective
office are full-time, year-round, constant, non-stop operations in which candidates
declare and run for office well before 60-days prior to an election day and Plaintiff
Pearson wishes to support those and other candidates when she likes via Political
Yard Signs.

86.     If on November 9, 2022, former President Donald J. Trump
announces his campaign for the presidency in 2024, Plaintiffs Pearson intends and
desires to post a "Trump 2024" Political Yard Sign in her yard immediately

thereafter, and as soon as November 10, 2022, if practicable. However, November 10, 2022, is certainly more than 60 days prior to the Pennsylvania primary election and general election days in 2024. Thus, Plaintiff Pearson would be prohibited by the Sign Ordinance §805. C.3.d. for advocating for her preferred political candidates for a considerable period.

87.    "Extended durational bans on political speech for all but 45 days before and 10 days after a political election, are bans nonetheless -- inconsistent with the "venerable" status that the Supreme Court has accorded to individual speech emanating from an individual's private residence." Curry v. Prince George's Cty., 33 F. Supp. 2d 447, 455 (D. Md. 1999).

88.    According to the Ohio Supreme Court, "Although the Supreme Court has not considered the issue, the overwhelming majority of courts that have reviewed sign ordinances imposing durational limits for temporary political signs tied to a specific election date have found them to be unconstitutional." City of Painesville Bldg. Dep't v. Dworken & Bernstein Co., L.P.A., 2000-Ohio-488, 89 Ohio St. 3d 564, 569, 733 N.E.2d 1152, 1157.

89.    The durational limits set forth in §805. C.3.d. violate the First Amendment.

WHEREFORE, Plaintiffs pray this Honorable Court to declare that Sign Ordinance, §805. C.3.d., facially as to all Plaintiffs' and all Borough of Camp Hill

residents', and as-applied to Plaintiff Pearson, violates the right to free speech guaranteed by the U.S. Const. amend. I. and to grant the Request for Relief as to Counts I and II set forth below.

<b>Request for Relief as to Counts I and II</b>

a.    Declaratory Judgment that Sign Ordinance, §805. C.1.a. is unconstitutional on its face and as applied to Plaintiff Marchiraju;

b.    Declaratory Judgment that Sign Ordinance §805. C.3.d. is unconstitutional on its face and as applied to Plaintiff Pearson;

c.    Permanent Injunction to prohibit the Defendants from enforcing Sign Ordinances, §805. C.1.a., and §805. C.3.d.;

d.    Declaration that the rights of the Plaintiffs and the residents of the Camp Hill Borough have been violated by the Sign Ordinance, §805. C.1.a. and C.3.d and the various actions of the Defendants to enforce the same and that the Defendants are enjoined from engaging in such violations and declaring them to be null and void *ab initio*;

e.    Cost of suit and attorney's fees per 42 U.S.C. §1983 and §1988;

f.    Such other relief as this Honorable Court deems to be fair and just.

Respectfully submitted,

_/s/_Marc A. Scaringi_____
Marc A. Scaringi, Esquire
Pa Supreme Court ID No. 88346
Attorney for Plaintiffs

Scaringi Law
2000 Linglestown Road, Suite 106
Harrisburg, PA 17110
marc@scaringilaw.com
717-657-7770 (o)
717-657-7797 (f)

## VERIFICATION

I, Paul Lewis, on behalf of the Camp Hill Borough Republican Association, hereby swear or affirm that the above-written statements of fact in the foregoing Complaint are true and correct to the best of my knowledge, information and belief and that I make said statements of fact subject to the penalties of 18 Pa.C.S §4904 relating to unsworn falsification of authorities.

Paul Lewis
Chairman,
Camp Hill Borough Republican Association

## VERIFICATION

I, Caroline Machiraju, hereby swear or affirm that the above-written statements of fact in the foregoing Complaint are true and correct to the best of my knowledge, information and belief and that I make said statements of fact subject to the penalties of 18 Pa.C.S §4904 relating to unsworn falsification of authorities.

Caroline Machiraju

## VERIFICATION

I, Katherine Pearson, hereby swear or affirm that the above-written statements of fact in the foregoing Complaint are true and correct to the best of my knowledge, information and belief and that I make said statements of fact subject to the penalties of 18 Pa.C.S §4904 relating to unsworn falsification of authorities.

Katherine Pearson